UNITED STATES of America,
Plaintiff,

v.

Arthur KALLAS and Anna Kallas,
Defendants.

Civ. A. 14622.

United States District Court
E. D. New York.

Dec. 12, 1958.

Cornelius W. Wickersham, Jr., U. S. Atty., Eastern District of New York, Brooklyn, N. Y., for plaintiff, Lawrence G. Nusbaum, Jr., Asst. U. S. Atty., Brooklyn, N. Y., of counsel.

Theodore H. Beyer, Baldwin, L. I., N. Y., for defendants.

ABRUZZO, District Judge.

This suit was commenced by the United States of America on August 5, 1954. It was instituted pursuant to Title 38 U.S.C.A. § 694c–1. It is necessary to set forth in detail the facts as testified to by the witnesses, coupled with the exhibits introduced into evidence, in order to understand the claim of the plaintiff and the defense of the defendants.

On December 9, 1950, Arion C. and Madalyn Mancuso, his wife, entered into a contract to purchase from the defendants a dwelling to be erected on the west side of Kallas Court, being plot No. 69 as shown on Survey No. A–7425, Map of Kallas Manor (proposed located in Elmont, Nassau County, N. Y. dated October 21, 1950.) The purchase price of this house was set at $12,500.

On February 7, 1951, a new agreement of purchase was entered into between the parties for a dwelling to be erected

on the west side of Kallas Court with no designation as to the plot number, but the terms were similar to the agreement of December 9, 1950, and the purchase price was set at $12,500. This agreement provided for delivery of the deed on or before March 1, 1951. (Deft's Exhibit A.)

On November 20, 1951, the day before Thanksgiving, Mancuso, hereinafter referred to as the veteran, moved into what was known as the model house. The closing of title took place on December 20, 1951. On the same date and after the title was closed the veteran signed a note for $1,250, he having been given credit concededly for an advance to the builder of $250. About a week later the veteran paid this note so that concededly the original purchase price of $12,500 was augmented by $1,500.

The claim of the Government before this Court now is that the $1,500 was a "side payment" from a veteran after the Veterans Administration had appraised the home for a specified amount, to wit, $12,500.

The defendants contend that the $1,500 was payment for "extras" which were put into this house by the builder at the request of the veteran. In view of the fact that the defendants claim this round amount of $1,500 was not part of the original price agreed upon but was for extras, they contend that the plaintiff is not entitled to any recovery.

There are five items which the defendants claim makes the total amount of $1,500 over and above the agreed purchase price of the house:

| | |
|---|---:|
| Brick veneer | $ 500 |
| Extra plumbing | 400 |
| Extra cabinets | 150 |
| Additional costs of construction | 400 |
| Extra electric | 50 |
| | $1,500 |

A pre-trial conference was held which culminated in the following stipulation:

"The Court: Counsel for the respective parties have agreed that the issue of fact and the only issue of fact before the Court is whether or not the fifteen hundred dollars of changes were made after the contract was entered into, that they were outside of the purview of the contract, and if the defendant can prove by credible proof that this fifteen hundred dollars was charged for improvements and changes ordered by the plaintiff outside of the contract, the defendant is entitled to a verdict, and the Government is only entitled to a verdict, or a judgment, if they can prove that the fifteen hundred dollars that counsel has portrayed was spent for improvements and changes within the purview of the contract."

Section 694c–1 of Title 38 U.S.C.A., reads as follows:

§ 694c–1. *Recovery of damages; jurisdiction; Attorney General as plaintiff in certain cases*

Whoever knowingly makes, effects, or participates in a sale of any property to a veteran for a consideration in excess of the reasonable value of such property as determined by proper appraisal made by an appraiser designated by the Administrator, shall, if the veterans pays for such property in whole or in part with the proceeds of a loan guaranteed by the Veterans' Administration under section 694a, 694b, or 694c of this title, be liable for three times the amount of such excess consideration irrespective of whether such person has received any part thereof. \* \* \*

This is the statute invoked by the plaintiff pursuant to which plaintiff claims to be entitled to judgment.

In accordance with the provisions of the agreement of February 7, 1951, the veteran made application for a first mortgage in the sum of $10,300 pursuant to the provisions of the Servicemen's Readjustment Act of 1944, as amended, and the Franklin National Bank agreed to issue a mortgage for $10,300. After a required Veterans Administration appraisal was made for $12,500 a certificate

of reasonable value was issued on October 8, 1951, and the mortgage was approved by the Veterans Administration.

By virtue of the above the purchase price of this house could not in any way be augmented. The questions, therefore, remain (1) whether any of these items constituting the sum of $1,500 were in fact "extras," and (2) whether or not any increase in the purchase price of this house of whatever nature, whether for additional cost of construction or for extras, should have been reported to the Veterans Administration before they were made.

### Testimony

The veteran testified substantially as follows:

He had originally contracted not for the house on the corner which is referred to in the testimony as the model house, but for the house three lots down; "but it got to a point where we had to move." "I kept asking Mr. Kallas to finish up this house, and he couldn't finish." He spoke with the defendant Kallas about having to move and the defendant said, "In order for you to move, you have to give me fifteen hundred dollars more." (Tr. 20.) The veteran agreed. The defendant offered him the model house and the veteran moved into that house on November 20, 1951.

The veteran testified further that the heating plant had not been installed in the house when he saw it and it was agreed that one of his own choice could be installed. It is conceded that the builder paid $1,000 toward this other heating plant contracted for with Barenklau and the veteran paid $800. It is evident from the testimony that the heating plant to be supplied by the builder would have cost $1,000 and that, therefore, when the veteran paid the extra $800 the account as to the heating plant was presumed to be squared.

The defendants claim that $400 of the $1,500 was for extra plumbing for the heating plant but Barenklau testified that he could see no reason for any extra plumbing, that his heating plant could be connected to the plumbing which was supposed to be supplied in the house by the builder.

The sum of $500 is claimed by the builder as the cost of replacing the wood shingles with brick veneer. There is some confusion in the testimony as to that. Kallas testified that he changed the shingles on this house to brick veneer at the request of the veteran, while the veteran testified that the brick veneer was on the house without any direction or order from him with respect to that.

As to the $150 for extra cabinets which Kallas claims he paid for, the veteran contends he paid $70 or $80 for them and put them in himself.

The sum of $400 is claimed by the defendants as being for additional cost of construction. The record is barren as to what construction this $400 was charged for, nor did the builder testify to one single item of construction that might be included in this "extra."

The defendants claim there was extra electrical work done to the extent of $50. The veteran testified that there was no change in the electrical work done on the house from the time he saw it until he took title.

The defendant had been a builder for about fifty-five years, having built about 75 or 80 houses in this area, so the veteran was dealing with an experienced builder.

The defendants rely heavily upon a memorandum made by an attorney, John M. Duffy. The veteran, quite foolishly perhaps, did not have an attorney representing him when title was closed. John M. Duffy concededly was the attorney for the defendants. Duffy testified that he made a memorandum for his office file of these five items totaling $1,500 after they had been agreed upon by the builder and the veteran at a conference in his office on August 8, 1951. The defendants place great stress on this memorandum made by their own attorney as evidence of the fact that $1,500 was for so-called "extras" which they claim the veteran requested.

The Court cannot accept the defendants' version with respect to the $1,500. The defendants did not produce any checks, except the $1,000 for the heating plant, which would substantiate or corroborate their contention. It is inconceivable to this Court that Duffy, an experienced lawyer, would make a memorandum for his file with respect to these five items pursuant to a conversation between the veteran and the builder without preparing an agreement and requesting both the veteran and the builder to sign it. Noting that all these items are in round amounts, it is odd that each one could result in an even figure. It would tend to lend credence to the veteran's testimony that the model house would be his if he paid an additional $1,500. This figure later had to be justified by the defendants as "extras." The defendants and Duffy, their attorney, were cognizant of the fact that they could not add $1,500 to the purchase price for that would have meant apprizing the Veterans Administration of this change. This, the Court is quite certain, the defendants intended to avoid. It must be kept in mind that the mortgage issued by the Bank was guaranteed by the Veterans Administration which was empowered to make appraisals based upon a specific purchase price.

This Court has come to the conclusion that this is a case of avariciousness on the part of the builder. The original agreement provided for closing of title on or before March 1, 1951. It must be assumed that possession would follow immediately. The veteran was in urgent need of a home. When he told the builder he had to move, the builder at that time had only the model house that was anywhere nearly ready for occupancy. The builder took advantage of this situation. He undoubtedly concluded that the veteran would agree quickly to the excess payment of $1,500 over the purchase price. The veteran testified that he would have been willing to give the builder $2,000 to get into the house.

The Court believes the veteran. It does not believe the defendants or their witnesses. The $1,500 consisting of five items was not for "extras." The Court finds from the evidence with respect to the five items, as follows:

The brick veneer ($500) was already on the dwelling and could not be termed an "extra." That item was included in the purchase price of $12,500.

The extra plumbing ($400) the Court finds was not furnished by the defendants.

The extra cabinets ($150) the Court finds the veteran paid for them and the cost was $70 or $80.

Additional cost of construction ($400) is disallowed as there is not the slightest evidence to corroborate it.

The Court finds that the extra electrical work ($50) was not furnished.

Findings of fact, conclusions of law and a decree may be entered in accordance with this decision, including treble damages as provided by statute.